UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH L.,[1] | ) |
| | ) No. 21 CV 3907 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) February 15, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Elizabeth L. seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") asserting that she is disabled by severe degenerative disc disease of the cervical spine, major depressive disorder, migraines, and other impairments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her disability applications. Before the court are cross-motions for summary judgment. For the following reasons, Elizabeth's motion is denied, and the government's is granted:

**Procedural History**

Elizabeth filed DIB and SSI applications in September 2018, alleging disability beginning that same month. (Administrative Record ("A.R.") 16, 210-18.) At the administrative level, her applications were denied initially and upon reconsideration. (Id. at 16, 105-06, 131-32.) Elizabeth appeared with her attorney at the November

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Elizabeth's first name and last initial in this opinion to protect her privacy to the extent possible.

2020 hearing before an Administrative Law Judge ("ALJ"), and she and a vocational expert testified. (Id. at 40-80.) Later that month, the ALJ ruled that Elizabeth is not disabled. (Id. at 13-39.) The Appeals Council denied Elizabeth's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). She then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. See 28 U.S.C. § 636(c); (R. 6).

## Analysis

Elizabeth argues that the ALJ "mischaracteriz[ed]" and "misrepresent[ed]" the record to gloss over her chronic and disabling symptoms, including fatigue, pain, and depression, and that substantial evidence does not support the ALJ's: (1) step-three evaluation of Elizabeth's migraines; and (2) mental residual functional capacity ("RFC") assessment. (R. 12, Pl.'s Mem. at 7.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision is supported by substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th

Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the parties' arguments and the record, the court concludes that a remand is not warranted.

**A.    Step-Three Finding**

Elizabeth challenges the ALJ's step-three finding that her migraines—in combination with her other impairments, including sleep disorders and major depressive disorder—do not meet or medically equal listing 11.02 (epilepsy). (R. 12, Pl.'s Mem. at 8-13; A.R. 20-23.) At step three the ALJ "compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations," known as "the listings." *Victoria R. v. Kijakazi*, No. 20 CV 4444, 2022 WL 3543231, at *2 (N.D. Ill. Aug. 18, 2022). Certain criteria described in the regulations must be satisfied to meet or medically equal such a listing. 20 C.F.R. Pt. 404, Subpt. P, app. 1. The claimant bears the burden of showing she satisfies the applicable criteria included in the listings. *See id.* §§ 404.1509, 404.1520(d), 404.1526; *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The listings do not include a migraine-specific entry, *see Kwitschau v. Colvin*, No. 11 CV 6900, 2013 WL 6049072, at *3 (N.D. Ill. Nov. 14, 2013), but listing 11.02 "is most analogous for evaluating migraines" because "a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in paragraphs B or D" for dyscognitive seizures, *Thomas H. v. Kijakazi*, No. 22 CV

50331, 2023 WL 6388145, at *2 (N.D. Ill. Sept. 29, 2023) (citing SSR 19-4p, 2019 WL 4169635, at *7). Under listing 11.02B, dyscognitive seizures must occur "at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." SSR 19-4p, 2019 WL 4169635, at *7. In turn, listing 11.02D "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." *Id*. To determine whether "a primary headache disorder is equal in severity and duration to the criteria in [listing] 11.02B," the ALJ considers "[a] detailed description from an [acceptable medical source] of a typical headache event" and "all associated phenomena" and associated limitations in functioning. *Id*. For listing 11.02D, the ALJ considers the same factors plus "whether the overall effects of the primary headache disorder on functioning results in marked limitation" in any of the four functional areas. *Id*.

Here, the ALJ acknowledged at step two that Elizabeth's migraines qualify as "severe." (A.R. 19.) But at step three, the ALJ determined that her migraines, either alone or in combination with her other impairments, do not meet or medically equal listing 11.02, referencing SSR 19-4p as the standard for analyzing medical equivalency. (Id. at 20.) In so finding, the ALJ explained that "[c]onsistent with [her] findings" in assessing Elizabeth's RFC, the record is "devoid of evidence" satisfying the requirements for meeting or medically equaling listing 11.02. (Id. at 21.) When assigning the RFC, the ALJ considered Elizabeth's report that her "migraines are so bad now that I am always nauseous," (id. at 24, 262), and her hearing testimony about

4

her migraines, (id. at 24-25, 64 (reporting migraines occur weekly and can last three to four days despite taking preventive medication as directed)). The ALJ also discussed the objective medical evidence showing that Elizabeth was in a car accident in March 2018 and suffered headaches in addition to other pain. (Id. at 26 (citing id. at 347 (reporting pain at 7 out of 10 upon impact, which then progressed to 8 during transport to emergency department)); see also id. at 371 (revealing "no focal neurological deficits on examination"), 389 (CT of brain finding "[n]o acute intracranial hemorrhage").) And the ALJ noted that Elizabeth's providers prescribed her migraine medication, (id. at 27, 515, 642), and that she also underwent physical therapy to help manage head, neck, and back pain, (id. at 438, 442 (noting hot pack on neck helped relieve headache), 474 (noting Elizabeth's intake report that she suffers headaches from arthritis in her neck)). She completed physical therapy within about two months, having achieved "maximum potential." (Id. at 26-27 (citing id. at 472); see also id. at 447, 449, 455 (noting Elizabeth's reports to physical therapists in April 2018 that headaches have improved); but see id. at 461 (reporting headache), 491 (noting tension-type headache).)

The ALJ further noted that Elizabeth was treated for migraines and depression at the Ganesha Institute of Neurology and Psychiatry from September 2018 to September 2020 with improved results. (Id. at 27-28 (noting Elizabeth was able to reduce headache with medication); see also id. at 515 (recording improvement in headaches in October 2018 while taking less migraine medication), 644 (recording in April 2019 migraine diagnosis as "not intractable" and "without status

5

migrainosus," meaning Elizabeth's migraines did not last longer than 72 hours and were more responsive to treatment); but see id. at 512 (recording November 2018 patient report of "frequent headaches" three times a week).) In October 2019 Elizabeth had a migraine that lasted for one week without relief, but her mental status on examination was normal and a steroidal treatment was effective in breaking the cycle. (Id. at 28 (citing id. at 654).) She later reported to her provider that she suffered migraines twice weekly, although they were "[m]uch less intense and nagging." (Id. (citing id. at 657).) Overall, the provider indicated an improvement in and less frequency with migraines. (Id. at 660 (finding in January 2020 "[m]igraines are stable as long as [Elizabeth] is consistent with meds"), 28-29 (noting by March 2020 decrease in migraine frequency and by June 2020 stability in migraines), 657 (noting Elizabeth declined injections to treat migraines), 720 (noting in September 2020 "[m]igraines are stable").) And neurological exams showed normal results. (Id. at 29; see also id. at 651, 655, 715.)

Nevertheless, Elizabeth argues that her impairment medically equals the required criteria for listing 11.02, pointing to medical records documenting her migraine symptoms, including "constant and intense" pain, nausea, irritability, anger, fatigue, hypersomnia, and depression, which persisted "*at best* . . . every other week," despite adjustments in medications prescribed for her migraines. (R. 12, Pl.'s Mem. at 10 (emphasis in original); R. 17, Pl.'s Reply at 3.) The government disagrees, asserting that Elizabeth fails to satisfy her burden of showing that her migraines,

either alone or in combination with other impairments, medically equal the listing. (R. 16, Govt.'s Mem. at 4.) The court agrees with the government.

As an initial matter, Elizabeth's argument amounts to a request for this court to reweigh evidence, which it cannot do. *See Deborah M.*, 994 F.3d at 788. Regardless, the ALJ explained at step three and when assigning Elizabeth's RFC how substantial evidence supports her finding that Elizabeth fails to satisfy her burden of showing she meets or medically equals listing 11.02, as discussed. *See Ribaudo*, 458 F.3d at 583. As the government points out, "a finding that an impairment medically equal[s] a Listing must be based on a prior administrative medical finding from a medical consultant from the initial or reconsideration adjudication levels or on an opinion from a medical expert." (R. 16, Govt.'s Mem. at 4 (citations omitted).) Elizabeth did not submit such medical finding or opinion in this matter. (Id.) And the state agency reviewing physicians and mental consultants who considered Elizabeth's applications for benefits found that her impairments do not meet or medically equal any listings, and she does not suffer any marked restrictions. (Id. at 85-92, 96-101, 111-17, 123-29.) As such, there can be no remand on this basis.

**B. Mental RFC Assessment**

Elizabeth next contends that the ALJ erred when assessing her mental RFC. (R. 12, Pl.'s Mem. at 13-15.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing the RFC, the ALJ must "evaluate all limitations that arise

7

from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Where the ALJ does not rely upon medical opinions, she must "thoroughly discuss[] the medical and other evidence," considering each of the claimant's "impairments and related function deficits," *Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020), and "describ[e] how the evidence supports each [RFC] conclusion," *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011).

In this case, the ALJ found that Elizabeth's impairments are severe but do not establish marked limitations. (A.R. 21-22.) The ALJ accounted for Elizabeth's mental impairments by limiting her to "simple tasks in a routine work environment, but not at a production rate pace, for example, no assembly line work[,]" "occasional changes in the workplace[,]" and "frequent interaction with supervisors and coworkers, but occasional interaction with the general public." (Id. at 23.) In developing this mental RFC, the ALJ evaluated the paragraph B criteria and determined that Elizabeth has mild limitations in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace ("CPP"), and adapting or managing oneself. (Id. at 21-22.)

In so doing, the ALJ further discussed evidence relating to Elizabeth's mental impairments, including CPP limitations. For example, the ALJ noted Elizabeth's reports that she experiences "brain fog, forgetfulness, [and] confusion," feels

8

"discombobulated," and has difficulties with "memory, completing tasks, concentration, understanding, following instructions, and getting along with others." (Id. at 24 (citing id. at 262, 277).) The ALJ indicated that Elizabeth was prescribed Adderall to control daytime hypersomnia, (id. at 27 (citing id. at 537)), and had a "single moderate episode of major depressive disorder," (id. at 30 (citing id. at 491)). But she also recognized that Elizabeth's memory generally was intact, "neurological examinations were normal," her mood was "euthymic with congruent affect," and she exhibited a "linear thought process." (Id. at 29-30 (citing id. at 564, 651, 703, 719).)

The ALJ then considered the medical opinion evidence, including the state agency psychologists' opinions that Elizabeth: (1) has a mental impairment that causes mild limitation in understanding, remembering, or applying information, and moderate limitations in the other paragraph B functional areas; and (2) can "carry[] out simple tasks over the course of routine workday/workweek within acceptable attention, persistence, pace tolerance," "sustain the basic demands associated with relating adequately with supervisors and co-workers, with limited contact with the general public," and "adapt to routine workplace change, remain aware of environmental hazards, form basic plans/goals, and travel independently." (Id. at 30 (citing id. at 85-90, 97-102, 112-16, 123-28).) The ALJ found these opinions "generally persuasive" because, for the most part, they were consistent with the evidence. (Id.) The ALJ determined, however, that greater restrictions—which she assigned—were warranted "to accommodate [Elizabeth]'s symptoms of intermittent irritability

9

documented in the records" and "migraines likely worsened by stress, and general worsening of symptoms due to stress." (Id.)

Elizabeth specifically challenges the ALJ's CPP finding, arguing that the evidence supports greater off-task and social interaction restrictions resulting from "temperamental deficiencies" and "chronic fatigue." (R. 12, Pl.'s Mem. at 13-15.) But she fails to identify any greater limitations the ALJ should have included in the mental RFC. As the government correctly points out, "[b]ecause [Elizabeth] fails to indicate what additional limitations her selective citations [to evidence] support, any error in the ALJ's [RFC] assessment would be harmless." (R. 16, Govt.'s Mem. at 11.) In any event, the ALJ adequately explained how the evidence of record, including Elizabeth's reported daily activities, objective medical evidence, and opinion evidence, supports the mental RFC she assessed. (A.R. 22, 24-25, 27.)

## Conclusion

For the foregoing reasons, Elizabeth's motion is denied and the government's is granted. The Commissioner's final decision is affirmed.

**ENTER:**

_[signature: Young B. Kim]_

**Young B. Kim**
**United States Magistrate Judge**

10